It's Demetrius Walker versus Poveda and Roberts and Veman. Mr. Healy is here for the appellate, Mr. McCollum for the appellees, and once you're all ready, Mr. Healy, you can begin. Thank you, Your Honor. May it please the Court, Christopher Healy on behalf of Mr. Walker. This case can be decided narrowly by the black-letter principle that factual disputes cannot be resolved on summary judgment. This Court should reverse the District Court for three reasons. First, the District Court resolved material factual disputes against Mr. Walker, which it was not permitted to do on summary judgment. Second, viewing those disputed facts in Mr. Walker's favor, the officers used force that was clearly unlawful under no fewer than five of this Court's decisions decided at the time of Mr. Walker's arrest. And third, any other issues in support of the District Court's judgment have not been raised by the officers and are therefore waived. All right, so can I ask you a question? I think I agree with you about sort of the fundamental issue in the case. You cite, as I understand from your briefs, two sources for the disputed facts. Document 10, you reference page 5, and document 58, you reference pages 3 and 4. Those are, you know, his responses to the officer's account. You agree, I assume, that under the officer's account of sort of the fullness of the arrest that this, that the excessive force claim would fail. So this probably comes down to whether or not you have sort of frontally disputed the officer's account. The trouble I'm having is that even giving those sources the fairest possible reading, I just don't really see that they dispute sort of head-on the officer's account. All they really describe is sort of what happened, but they don't dispute the officer's account at all of why. Like, they never say. It basically is just sort of an, it's just sort of an ellipsis. Those sources don't dispute the officer's story. They just sort of tell half the story. They never say like, oh, I didn't do anything to warrant this treatment. They just said, you know, like, I tried to give the guy my license and they armbarred me or whatever. Do you see my point? I do, Your Honor, and I think, but I think that he does dispute those facts. So I point the court to the trouble. Yeah, so which specific, and this will be helpful for me, and I'll just make notes as you go along, but which specific sources and statements do you point to that actually dispute the officer's contentions that he resisted or engaged in provocative and violent conduct? So first, I would point to his summary judgment brief, which is Doc 58 at page 3. He says that he attempted to present Officer Poveyta his identification, at which time Officer Poveyta immediately placed him into hand restraints, and then while he was in hand restraints, Officer Poveyta grabbed his right wrist, began bending it in an aggressive manner, and broke his wrist. Right, but so I guess that this is the trick for me. So the officers say that he said, you know, what the F did I do? He became agitated, he adopted a fighting stance, and he tried to wriggle out of the handcuffs. And in sort of response or dispute of that, Walker says, I attempted to present my ID, at which time they put me in hand restraints. But that doesn't really dispute, does it, their contention that he was provocative and violent. It just says, maybe it means like, while being provocative and violent, I tried to give the guys my ID. Well, Your Honor, I mean, Mr. Walker is pro se, so he drafted this by himself. So under the liberal pleading standards for pro se plaintiffs, he's entitled to every reasonable inference in his favor. And I think it is a reasonable inference to, when you read his statement, that when he says he was placed in handcuffs immediately after attempting to provide his ID, that he's disputing that he gave the officers justification to restrain him. But I don't rest just on that. So if you look at page six of his amended complaint, that's doc 10. This relates to the pepper spraying, which occurred a little bit after the initial encounter with the officers. So the district court, in its analysis, said that Mr. Walker had resisted the officer's attempts to put him into the police cruiser. Once inside, he began immediately kicking the rear door panel. He broke a piece of the door, and as a result, he was pepper sprayed. But what Mr. Walker said is that he was placed in the back of the car, and he says Mr. Walker was sprayed with chemical agents by defendant Roberts and Veman while he was in the back of the police cruiser, all for asking why he was in police custody. Mr. Walker was kicked, punched by all three of the above-named defendants. Flex cuffs were applied, and then he was hogtied. So when he says that he was beaten up, all for asking why he was being detained, he's disputing that he was thrashing around in the back of the car and giving the officers cause to pepper spray him. Yeah, so, I mean, I actually agree with you about that. As I've sort of counted them up, it seems to me there are basically sort of five sub-episodes here. One is the initial arrest, two is the bent wrist, three is the first pepper spray, four is the hogtie, five is the second pepper spray. And I agree with you about the first pepper spray episode, which is one that you're discussing there. I actually think that you also may have a leg to stand on the second pepper spray episode because of, you know, sort of giving every benefit of every doubt to the statement, you know, all for asking why he was in police custody. The other three episodes, I just don't really see that there is any dispute as to the why of this happened, why these things happened. But as to the pepper spray, I think that you may be onto something. And I guess then I think the question there is, in an excessive force case, haven't we said that this is an objective standard? It's not about sort of the officer's motivations for doing something. You know, sort of he's kind of like shrinking their heads why they did it, all for asking why I was in police custody. But is that really a dispute about sort of the objective realities of what was happening around him? Yeah, I think it is, Your Honor, because I don't think what he's trying to do is suss out the officer's motivations. I think what he's doing is providing the court with his testimony about what happened. And he says, I asked why I was detained, and then I was pepper sprayed. So, you know, I agree with you that the Fourth Amendment standard is an objective standard, and it doesn't matter what was in the officer's head. But I think the timing that Mr. Walker describes here suggests, at least in his view, and under the summary judgment standard, you have to look at his view, that he was pepper sprayed in response to asking why he was being detained. So before we reach the end of my time, I want to speak a little bit about the qualified immunity question. I mean, I do think that the crux of this case is the procedural issue. And once that's decided, the qualified immunity issue is quite simple. But, you know, if the court views the and as the district court should have done, then the officers used force that was clearly unlawful under at least five of this court's decisions that were decided at the time of Mr. Walker's arrest. Slicker v. Johnson said it's unlawful to kick a suspect in the ribs and beat his head on the ground while he's handcuffed and not posing a threat. Lee v. Ferraro, unreasonable to slam a plaintiff's head against the trunk of her car after she was arrested, handcuffed and posing no threat to the officers and no risk of flight. The common thread through of all of these cases is that when a suspect is not resisting and is not posing a threat to the officers, to anyone else, doesn't pose a risk of flight, the officers can't use any force, much less the quite substantial force that was used against Mr. Walker here. And, you know, as the facts, as the court must view the facts, Mr. Walker contests that he disputed, that he resisted. He says that he didn't give the officers any justification for their use of force against him. And that is, that's sufficient to go to a jury. I mean, it's a credibility dispute between the officer's account of his arrest and Mr. Walker's account. The district court just blew past Mr. Walker's verified amended complaint and his summary judgment brief. If you look at pages, about pages four and five of the district court's summary judgment opinion, where she talks, she does her analysis of the officers, of the use of force, she repeatedly adopts the officer's version of the disputed facts. And one reason we know that is under the heading, Mr. Walker's response to the summary judgment brief. The district court didn't discuss his amended, his verified amended complaint or his verified summary judgment brief at all. I think if the district court had looked at that evidence and had still concluded that he had failed to raise a material factual dispute, A, I think that would be incorrect. But, B, I also think the district court would have said so. So, I mean, at the very least, the court should remand for the district court to consider all of the evidence before it which was required to do on summary judgment. If there are no fewer questions, I'll sit down. Thank you. All right. Thank you, Mr. Healy. We'll hear from Mr. McCollum. Good morning. May it please the Court. Kenneth McCollum, attorney for the City of St. Petersburg. I represent all four officers in this case, Daniel Pavetta, Andrew Veman, Jenna Roberts, and Damian Schmidt. This is a case where we feel that the court should sustain the district court's granting of our motion for summary judgment in this case. This case does seem to turn procedurally on plaintiff's contention that their allegations contained in their complaint in summary judgment motion were not considered by the court. We would simply argue that in this case, the trial judge in this case did state that the plaintiff can't rely solely on the complaint in the initial pleadings and needs to be some type of support. There are some cases such as Holyfield that state that conclusory allegations in and of themselves are not enough and a summary judgment motion can be appropriate when a plaintiff, and that was in a prisoner case, produces nothing more than naked allegations. And this is a case where it is our belief that But you're conceding then, as I understand it, that the judge was wrong when she said that a pro se prisoner cannot rely solely on the complaint and the other initial pleadings to contest the motion for summary judgment. Well, I don't think the judge was entirely wrong. There does seem to be some cases that state that summary judgment is appropriate when all that a plaintiff is relying on is the naked allegations within the complaint. But that's not what we have in this case, that he's also relying on his opposition to the motion for summary judgment where he says, I did not resist arrest. Right? That is correct. That is what plaintiff is arguing in this case. He says he didn't resist arrest. The officer says he did resist arrest. So isn't that a credibility determination that has to be made by the fact finder? It could be considered a credibility determination. However, the record evidence in this case based on the sheer number of affidavits filed by all four of the officers involved in the incident combined with the supervisor who reviewed everything. He says something different than the other four officers, but I thought the standard was that we have to consider the evidence in the light most favorable to him. It seems like that's a question for the fact finder or the jury to decide whether or not the force that was used to restrain him was excessive. If he says I didn't resist arrest, they said he did. I mean, that's a credibility determination for the fact finder. Why am I wrong about that? Well, I don't think you're entirely wrong on the total sum of the evidence that would be considered. In this matter, if we look at the analysis to the qualified immunity, we didn't even get the qualified immunity. Yeah. That's for summary judgment. That's for later. Just so I'm clear, where does he say I didn't resist arrest? This is sort of the adversary, and I think he got to the closest suggestion that he didn't resist arrest with respect to the pepper spray where he said that he was sprayed, quote, all for asking why he was in police custody. Maybe that's good enough, but is there a place in this record where more clearly he says I didn't resist arrest, I wasn't violent, I wasn't provocative? I'm not aware of that, Judge. Does he say he resisted arrest? In his own statements, he does not indicate that. Yeah, so he just doesn't really say one way or the other whether he resisted arrest. It's kind of a blank slate. His indication is that he really didn't do anything wrong. He asked why he was being detained, why he was being arrested, and flies in the face of all the other statements from all the officers that were involved on this. Do you agree that the implication of his filings is that the upshot is that he didn't do anything wrong? Do you agree with that? Taken from his perspective, I would agree with that. This is a verified complaint, and we have to give every weight or every credibility decision at the summary judgment stage to the verified complaint in his affidavit. His response to summary judgment is part of that. I just can't see where there's no material issue of fact in this case. I'm struggling with that, and I think my colleagues are too. I understand, Judge. I would simply say again, and I don't know where I can go with this, but the general weight of everything that was considered by the trial. Is probably not a term you want to use at this procedural posture. Well, as a district court judge, I can understand. I mean, it's easy to fall into the rut that, well, even though this guy says this didn't happen, I know what the finder of fact is going to do. And it's easy to fall into that. In other words, more likely than not, the jury is going to find for your clients, for the officers and against the petitioner here. I'm not saying that that's going to happen. I'm just saying that it's easy to fall into that. In other words, how are they going to believe the petitioner or the plaintiff in this instance? So to me there is, and I'll have to confer with my colleagues, but I just think you have a material issue of fact here. I understand. And I just want to, are you just saying that there really is not one? Well, I don't know if I want to concede that, but having said that, this is a difficult case from our perspective in terms of if the court is inclined to take plaintiff's allegations contained with his complaint and summary judgment response. In the light most favorable to him, it puts us in a difficult position. There's no question. That being the case, certainly would be a situation where the trial court, certainly qualified immunity would not be ruled on at this point. That would have to go back for further proceedings with the trial court. Any other questions I can answer? I see no other questions. Thank you, Mr. McCollum. Thank you. Mr. Healy, you've reserved some time. Thank you, Your Honor. I only have a few quick points on rebuttal. Judge Newsom, I want to give you one more place where he specifically raises a factual dispute. I mean, I think he does so throughout, but a very particular point. So this is at the traffic stop, or excuse me, at the traffic light en route to the Pinellas County Jail. He says that Detective Schmidt arrived, and this is Mr. Walker's summary brief at page six. Detective Schmidt arrived at the scene and attempted to speak with the plaintiff, but plaintiff didn't want to talk to Detective Schmidt, at which time Detective Schmidt grabbed plaintiff by the throat, used a racial slur, and choked him. I mean, that's, he's denying that he gave any justification for use of force right there. I think I want to be very clear in setting out what we're relying on. So we have the verified document. What I would ask the court to do is, when you look at his brief, and particularly the factual background section, just imagine it's a separate document that says declaration on top. It's effectively the same thing. You know, so we don't rest just on the amended complaint for raising material factual dispute. No fewer questions? No other questions? I think we have your argument, counsel. Thank you. Thank you.